UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jacquelyne Hollander, | ) C/A No.: 1:11-2620-TLW-JRM |
| Plaintiff, | ) |
| vs. | ) |
| Hon. Judge D.A. Early, III in his official capacity as Judge of the Circuit Court of the 2nd Judicial Circuit, South Carolina; Hon. Alan Wilson, in his official capacity of Attorney General of South Carolina, | ) Report and Recommendation |
| Defendant(s). | ) |

Plaintiff, Jacquelyn Hollander, files this action pursuant to 42 U.S.C. § 1983 alleging she is entitled to a portion of the estate of deceased entertainer, James Brown. She sues the State Circuit Court Judge who handled the probate case, and also the Attorney General of the State of South Carolina. Besides filing in this District, Plaintiff acknowledges that she has filed four other cases pertaining to James Brown's estate. Two of the four cases were filed in the U.S. District Court for the Northern District of Illinois, and the remaining two cases were filed in the U.S. District Court for the Central District of California. The Plaintiff also participated in the probate proceedings filed in the State of South Carolina.[1]

---

[1]The discussion in this Report and Recommendation concerning other cases filed by the Plaintiff, or cases in which she participated, was taken from the public record. *See Colonial Penn Ins. Co. v. Coil*, 887 F. 2d 1236, 1239 (4th Cir. 1989) (federal courts may take judicial notice of

Following the death of James Brown in 2006, probate proceedings were instituted in Aiken County, South Carolina. In early 2009, Plaintiff filed a notice of appearance in that matter, and objected to the proposed settlement agreement. Nonetheless, the agreement was approved by the Court in May 2009.

On April 6, 2009, Plaintiff filed *Hollander v. Estate of James Brown*, No. 1:09-2147(N.D. Ill. August 18, 2009) in the United States District Court for the Northern District of Illinois, naming prior trustees of Brown's estate. Plaintiff later sought to substitute the current trustee, however, the court granted Defendant's motion to dismiss, noting it lacked personal jurisdiction over all individual defendants, including the proposed new Defendant.

Plaintiff filed a second case in the United States District Court for the Northern District of Illinois on August 27, 2009, *Jacqueline Hollander v. The Estate of James Brown, et al.*, No. 1:09-5234 (N.D. Ill. October 15, 2009), naming new Defendants from the prior Illinois case. The court granted Defendant's motion to dismiss because the complaint and the brief failed to provide new facts to support the court's assertion of personal jurisdiction over the named Defendants as they did not have any contact with the State of Illinois.

Plaintiff then filed her first action in the United States District Court for the Central District of California, *Jacqueline Hollander v. The Irrevocable Trust Established by James Brown in August 1, 2000*, No. 2:10-cv-3357 PSG-AJW, 2010 WL 2719850 (C.D. Cal. July 7, 2010) where she sought declaratory relief and an accounting against the named Defendants based on allegations that, as a

---

proceedings in other courts if those proceedings have a direct relation to matters at issue)*; see also St. Louis Baptist Temple, Inc. v. FDIC.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (same); *United States ex rel. Geisler v. Walters*, 510 F.2d 887 (3d Cir. 1975)(same).

result of a previous partnership with James Brown, she was the lawful owner of trust assets that were to be distributed to Brown's heirs and others under a settlement agreement approved by a South Carolina state court.

On July 7, 2010, the court dismissed the complaint finding it lacked subject matter jurisdiction over the matter. The court noted that in order to grant the requested relief, it would have to assert control over property that was the subject of probate proceedings in South Carolina, in contravention of the "probate exception" to federal subject matter jurisdiction, citing *Marshall v. Marshall*, 547 U.S. 293, 311 (2006).

Plaintiff subsequently filed a second case in the Central District of California, *Jacqueline Hollander v. the Irrevocable Trust Established by James Brown, Russell L. Baunight, UMG Recordings, Inc., Universal Music Group, Inc., Warner Music Group, Inc., and Warner/Chappell Music, Inc.*, No. 2:10-7249-PSG-AJW, 2011 WL 2604821 (C.D. Cal. June 30, 2010). Plaintiff again sought a declaration that she had a partnership with Brown, and claimed the trust established by him in 2000 was an extension of that partnership, thereby entitling her to "all of the copyrights and trademarks donated to the Trust by James Brown...." Based on those determinations, she also sought another declaration that some of the Defendants infringed upon those copyrights, entitling her to statutory damages and reimbursement for unpaid royalties. Defendants moved to dismiss the complaint for lack of federal subject matter jurisdiction, personal jurisdiction, improper venue, and untimely service.

The court determined that the Plaintiff could not evade the probate exception to federal jurisdiction, by alleging that the Trust contained intellectual property that was not part of the estate, because ownership of James Brown's intellectual property was a central element of the settlement

3

agreement in the State of South Carolina's probate court, again citing *Marshall, supra*. Furthermore, the court noted that Plaintiff's copyright claim was unconvincing because the probate exception is not limited to diversity jurisdiction, and South Carolina's probate court took *in rem* jurisdiction over Brown's intellectual property. Finally, the court declined to examine Plaintiff's request for declaratory relief regarding her alleged partnership with Mr. Brown, finding that it was a "thinly-veiled attempt to re-litigate broader claims" regarding her ownership interest, if any, of Brown's assets. To do so, the court stated, "would, in effect, determine the rights of interested parties and therefore interfere with administration of the estate by the Probate Court." Consequently, the court granted the Defendant's motion to dismiss.

Plaintiff has now filed the instant action. In order for this Court to hear and decide a case, the Court must, first, have jurisdiction over the subject matter of the litigation. Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Because federal courts have limited subject matter jurisdiction, there is no presumption that the court has jurisdiction. *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). Accordingly, a federal court is required, *sua sponte*, to determine if a valid basis for its jurisdiction exists, "and to dismiss the action if no such ground appears." *Bulldog Trucking*, 147 F.3d at 352; *see also* Fed. R. Civ. P.12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). A Plaintiff must allege the facts essential to show jurisdiction in his pleadings. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *see Dracos v. Hellenic Lines, Ltd.*, 762 F.2d 348, 350 (4th Cir. 1985) ("plaintiffs must affirmatively plead the jurisdiction of the court"). To this end, Federal Rule of Civil

4

Procedure 8(a)(1) requires that the complaint provide "a short and plain statement of the grounds for the court's jurisdiction [.]" If, however, the complaint does not contain "an affirmative pleading of a jurisdictional basis a federal court may find that it has jurisdiction if the facts supporting jurisdiction have been clearly pleaded." *Pinkley, Inc. v. City of Frederick,* 191 F.3d at 399 (citing 2 *Moore's Federal Practice* § 8.03[3] (3d ed. 1997)). Although the absence of subject matter jurisdiction may be raised at any time during the case, determining jurisdiction at the outset of the litigation is the most efficient procedure. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). If the Court, viewing the allegations in the light most favorable to the Plaintiff, finds insufficient allegations in the pleadings, the Court will lack subject matter jurisdiction. *Id*.

Longstanding precedents preclude the United States District Court for the District of South Carolina from reviewing the findings or rulings made by state courts. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983), where the Supreme Court of the United States held that a federal district court lacks authority to review final determinations of state or local courts because such review can only be conducted by the Supreme Court of the United States under 28 U.S.C. § 1257. *See also Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). This prohibition on review of state court proceedings or judgments by federal district courts is commonly referred to as the *Rooker-Feldman* doctrine or the *Feldman-Rooker* doctrine.

In *Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, (4th Cir. 2001), the court noted that "[t]he *Rooker-Feldman* doctrine holds that 'lower federal courts generally do not have [subject-matter] jurisdiction to review state-court decisions.' *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir.1997); *see also D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 482-86 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). The *Rooker-Feldman* doctrine precludes 'review of adjudications of the

state's highest court [and] also the decisions of its lower courts.' *Jordahl v. Democratic Party*, 122 F.3d 192, 199 (4th Cir.1997). This bar extends not only to issues actually decided by a state court but also to those that are "inextricably intertwined with questions ruled upon by a state court." *Plyler*, 129 F.3d at 731 (4th Cir.1997) (internal quotation marks omitted). A federal claim is 'inextricably intertwined' with a state court decision if 'success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.' *Id.* (internal quotation marks omitted)." *Safety-Kleen, Inc.*, 274 F.3d at 857-58. This prohibition includes constitutional challenges. *See Curley v. Adams Creek Associates*, No. 10-1465, 409 Fed. Appx. 678 (4th Cir. January 28, 2011)(the "doctrine establishes that a federal district court lacks jurisdiction over a litigant's challenge to a state court decision, including allegations that the state court's action was unconstitutional").

The Supreme Court clarified the scope of the *Rooker- Feldman* doctrine in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005):

> The Rooker- Feldman doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Id.* at 1521-22; *see also Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006) ("Exxon requires us to examine whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself. If he is not challenging the state-court decision, the Rooker- Feldman doctrine does not apply.")

In this matter, Plaintiff seeks to stay the probate proceedings, which have already been concluded, and also asks for an accounting from the trustee. This is a direct attack on the ruling of

6

the State Circuit Court Judge. Accordingly, the *Rooker-Feldman* doctrine would apply.

Furthermore, this type of relief is in the nature of mandamus. Mandamus may not be used as a substitute for appeal. *In re Lockheed Martin Corp.*, 503 F.3d 351, 353 (4th Cir. 2007); *In re Catawba Indian Tribe*, 973 F.2d 1133, 1136 (4th Cir. 1992). "Courts are extremely reluctant to grant a writ of mandamus." *In re Beard*, 811 F.2d 818, 827 (4th Cir. 1987).

Additionally, case law in this Circuit recognizes the well-established "probate exception" to diversity jurisdiction, i.e., federal courts have no jurisdiction over matters that are exclusively within the jurisdiction of state probate courts. *See Beattie v. J.M. Tull Foundation*, 941 F. Supp. 57 (D.S.C. 1996). *Cf. Foster v. Carlin*, 200 F. 2d 943, 947 (4th Cir. 1952); *Cottingham v. Hall*, 55 F.2d 664 (4th Cir. 1932); *Ladd v. Tallman*, 59 F.2d 732 (4th Cir. 1932).

In *Beattie*, *supra*, the Court noted that federal jurisdiction turns on "whether the action could be maintained in a state court of general jurisdiction in the state where the federal court sits." *Beattie*, 941 F.Supp at 58.  The court also acknowledged that a federal court would not have jurisdiction over "cases involving the probate of wills, disturbing the possession of an estate in the hands of a state probate court, or involving the conclusiveness of judgements of state courts in probate matters." *Id.* at 59.

To accept jurisdiction over this case would require this Court "to disturb possession of an estate properly in the hands of a state probate court". *Beattie* @ 59.  In addition, accountings, among other things, are all standard administrative functions for state probate courts.  In the State of South Carolina, probate courts have exclusive jurisdiction over all subject matter related to the construction of wills and questions arising in the administration of any trust. S.C. Code Ann. §§ 62-1-302(a)(1) and 62-7-201. Therefore, this Court is without jurisdiction to grant the requested relief.

7

**RECOMMENDATION**

Accordingly, it is recommended that the District Court dismiss the Complaint in the above-captioned case without prejudice and without issuance and service of process.

Joseph R. McCrorey
United States Magistrate Judge

December 22 , 2011
Columbia, South Carolina

*Plaintiff's attention is directed to the important NOTICE on the next page*.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).